CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 05 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| RENEE B. WARSING, | ) | CASE NO. 5:12CV00053 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's January 13, 2010 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision dated October 27, 2011,[1] an Administrative Law Judge ("Law Judge") found that plaintiff had worked since her alleged disability onset date, October 3, 2009.[2] (R. 35.)

---

[1] Plaintiff was previously found not disabled by Law Judges on June 24, 2005 and October 7, 2009. (R. 162-169, 175-186.)

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last

While finding that plaintiff's work was not full time in over twenty years, he pointed out that she had worked in thirteen of the last fifteen years and was still working as a telephone information clerk/surveyor five hours per day, three days a week, at the time of the hearing. (R. 35.) However, he concluded that the record did not support a decision based solely on plaintiff's work activity.[3] *Id.* Accordingly, he continued to the next steps in the sequential evaluation.[4]

The Law Judge determined plaintiff's obesity, fibromyalgia, obstructive sleep apnea, migraines, osteoarthritis, bursitis, affective disorder, and dependent personality disorder were severe impairments either singly or in combination.[5] *Id.* He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 36-37.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work with limitations: specifically, plaintiff could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and could only work in a low stress environment. (R. 37-65.)

The Law Judge relied on portions of the testimony of Gerald K. Wells, Ph.D., CRC, a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 65-69, 123-137.) Based on this testimony, the Law Judge determined that

---

for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2014. *See* 20 C.F.R. § 404.131(a); (R. 35, 350.)

[3] Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. § 404.1574.

[4] The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

[5] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

2

plaintiff was capable of performing her past relevant work as a telephone information clerk/surveyor and clerical worker. (R. 65-67.) In the alternative, the Law Judge determined that there were other jobs that existed in significant numbers in the local and national economy which plaintiff could perform: specifically, an office helper, night cleaner, and folder. (R. 68.) Accordingly, the Law Judge found that plaintiff was not disabled.[6] (R. 68-69.)

Plaintiff appealed the Law Judge's October 27, 2011 decision to the Appeals Council. (R. 1-11.) Plaintiff filed extensive additional evidence with the Appeals Council (R. 1728-1911.), but in its May 1, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued, briefs were filed, and oral argument was held by telephone before the undersigned on February 11, 2013.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would

---

[6] The Court of Appeals for the Fourth Circuit has not addressed the propriety of alternative sequential findings in Social Security disability cases. *See Clarkson v. Commissioner, Social Sec. Admin.*, No. SAG-11-631, 2013 WL 308954, at *3 (D.Md. January 24, 2013). However, alternative findings have been viewed favorably in other circuits. *See Murrell v. Shahala*, 43 F.3d 1388, 1389-1390 (10th Cir. 1994). It is true though that, under the regulations, if a claimant would be found disabled at a sequential level short of the final level, the inquiry is to cease. 20 C.F.R. § 404.1520(a)(4).

3

accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In her brief in support of her motion for summary judgment, plaintiff argues that the Law Judge erred by not assigning appropriate weight to the opinions of plaintiff's treating physicians and contends that the Commissioner's final decision is not supported by substantial evidence. (Dkt. No. 13, at 10-15.) The undersigned will address this challenge below.

The undersigned first observes that this is a close case on what can be described as an enormous record. There is clear evidence that plaintiff suffers several severe impairments which interfere with her ability to perform a full range of work, as well as with her activities of daily living. Ultimately, however, the question is whether there is substantial evidence supporting the Commissioner's final decision finding that plaintiff is not as limited as she claims.

Plaintiff has presented to the emergency room numerous times, frequently complaining of severe pain in her back, joints, and all over her body. However, throughout most of the relevant period, treating sources noted only minimal objective findings. On October 26, 2009, several x-rays of plaintiff's knees indicated only mild joint space loss and height and mild degenerative changes. (R. 1190-1191.) X-rays of plaintiff's chest from May 4, 2010 also revealed no abnormalities. (R. 1307.) An x-ray of plaintiff's spine on July 29, 2010 showed that plaintiff suffered mild degenerative disc disease. (R. 1411.) An October 2010 MRI of plaintiff's head showed some fetal anomalies but, otherwise, was unremarkable. (R. 1397.) A nerve test

4

performed in December of 2010 revealed generally normal findings with no suggestion that she suffered carpal tunnel syndrome, though there was some evidence of neurological deficits related to neuropathy, prolongation, or mild denervation in plaintiff's left arm. (R. 1421.) An MRI of plaintiff's back from January 7, 2011 also revealed minimal findings; including, a small disc protrusion, a minimal disc bulge, and disc degeneration with mild loss of disc height. (R. 1480.) Plaintiff's cranial CT in February of 2011 was also normal and without change since 2006, and similar findings were produced by a CT performed in October of 2011. (R. 1518, 1777.) An MRI in May of 2011 revealed diffuse lumbar disc disease with marked facet arthropathy, along with a "lot of" arthritis; but, it also showed no more than mild central canal or neural foraminal stenosis. (R. 1529, 1586.)

Plaintiff's physical examinations have also revealed mostly normal findings. From October of 2009 through February of 2010, plaintiff presented at the emergency room on several different occasions, complaining of migraines, back and abdominal pain, a rash, bronchitis, vaginal problems, and other issues. (R. 1171-1172, 1177, 1196, 1205, 1209, 1212-1216.) However, the findings on physical examination were almost entirely normal, revealing mild discomfort in November and tenderness in her neck and back and an anxious mood in late November and December. (R. 1177, 1205, 1209.) Otherwise, plaintiff's physical, neurological, and psychiatric statuses were found to be normal. (R. 1171-1172, 1177, 1196, 1205, 1209, 1212-1216.) In May of 2010, plaintiff was in mild discomfort and had some neck and back tenderness, but, otherwise, her examination findings were normal. (R. 1306.) From May of 2010 through November 2010, plaintiff was treated at the University of Virginia Medical Center for recurring vaginal problems, including a rectocele, which was corrected by surgery, and an unexplained

5

rash. (R. 1326-1345.) Her physical examination findings were normal, along with normal mood and affect. (R. 1326, 1329, 1332, 1339, 1344-1345.)

From July through August of 2010, plaintiff complained of "pain all over" and was treated for fibromyalgia, osteoarthritis, bursitis, and enthesopathy of the hip. (R. 1464-1475.) She displayed some tenderness and pain in her back, shoulders, and hip; pain on range of motion, and fibromyalgia tender points. (R. 1466, 1474.) However, the findings on her physical examination otherwise were normal, and she was reported to be in no acute distress despite complaining that her pain was "10" on a ten-point scale. *Id.* Plaintiff sought treatment for the same conditions in December 2010, when her fibromyalgia was found stable, and she received joint injections for her pain. (R. 1660-1663.) From September 2010 through January 2011, plaintiff sought treatment for a persistent daily migraine, an odd rash, hand numbness, and memory loss. (R. 1428-1440, 1486-1488, 1648-1659, 1664-1669.) Each treatment note documents physical examinations which revealed no functional deficits, no acute distress, and, further, that she was alert, oriented, and displaying normal concentration/memory, normal mood/affect, normal strength and range of motion, and was neurologically intact. *Id.*

In February 2011, plaintiff again sought treatment for a migraine headache, complaining of 10/10 pain. Her doctors considered whether she might have suffered a subarachnoid hemorrhage, but a cranial CT scan was normal, as was her physical examination; and she was found to be in no acute distress. (R. 1512-1514.) Plaintiff continued to seek treatment for her persistent headache, along with fibromyalgia and depression, in March and April of 2011. (R. 1624-1647.) Though she was again found to suffer fibromyalgia tender points, all other findings on physical examination were normal. *Id.* From the end of April through June of 2011, plaintiff sought treatment for lower back pain and was diagnosed with bursitis and lumbar spondylosis.

(R. 1579-1581, 1590-1592, 1607-1611.) An MRI revealed degenerative disc disease and significant arthritis, and there was tenderness on physical examination with notable limitations in range of motion in her lumbar spine and hip. *Id.* However, treatment records from July 2011 indicate that plaintiff presented normal physical examinations findings. (R. 1536-1540, 1560-1562.)

Physical therapy records from March through September 2011 reveal that plaintiff complained of tenderness in her back and experienced mild to moderate limitations in range of motion of her back, hips, and upper extremities. (R. 1700-1737.) However, she noticeably improved over the course of therapy, especially from July to September when she was discharged. (R. 1735-1737.) Finally, plaintiff's treatment records from October 2011, which are nearest her hearing before the Law Judge, reveal physical examination findings which essentially were normal.[7] (R. 1741-1750, 1803-1805.)

Plaintiff's treatment plan has met with mixed success, and there are some inconsistencies in the record. A report from July 2011 revealed that pain management had largely failed in relieving her symptoms, specifically relating to her chronic headaches; as a result of which, plaintiff's medication was changed and both nerve blocks and Botox therapy were considered. (R. 1563.) A report from October 2011 also revealed that a nerve block was not successful in

---

[7] It is clear that plaintiff also suffers from moderate to severe sleep apnea, with relatively normal sleep latency, but no REM sleep and "highly abnormal" sleep architecture. Plaintiff displayed no arterial oxygen de-saturation. Moreover, her memory loss, fatigue, and problems with concentration often have been tied to her sleep apnea. (R. 1223, 1236, 1377, 1385, 1439.) Plaintiff's treatment providers were optimistic that her sleep apnea was controllable through PAP therapy, with which plaintiff did not comply, claiming that her fibromyalgia interfered with the use of the nasal and full face masks. (R. 119.) The treatment providers found plaintiff's described pain from the nasal mask "unusually odd" and discussed how plaintiff had abandoned PAP therapy in 2006 after a single attempt. (R. 1314, 1318.) In October 2011, plaintiff was encouraged to not give up so quickly, as treating her sleep apnea would improve all aspects of her life. (R. 1746.) A claimant generally must comply with their treatment plan, unless he/she has shown good cause for failing to do so. 20 C.F.R. § 404.1530.

7

controlling her pain. (R. 1742.) However, several other reports indicated that her pain was relieved by medication, joint injections, and changes in posture like sitting; that her fibromyalgia was stable, and she was encouraged to exercise more to relieve her symptoms. (R. 1434, 1469, 1532, 1536, 1576, 1604, 1654, 1657, 1660, 1685, 1700-1727.)

Plaintiff frequently was found to be depressed, anxious, fatigued, and to have problems with concentration and memory, closely tied to her sleep apnea. (R. 1222-1229, 1233, 1236, 1238, 1242, 1245, 1248.) She was in therapy for seven years, which was terminated in March 2010 after she had made "significant progress." (R. 1230, 1251.) Plaintiff's therapist found that continuing therapy would only "reinforce [plaintiff's] sense of herself as helpless and ineffective." (R. 1242.) Plaintiff was transitioned to "meds only," though she eventually began to see a therapist again. (R. 1222, 1230, 1370.) However, the physical examination findings during this period reveal that, with few exceptions, her affect, memory, attention span, concentration, and level of distress were all normal.[8]

While plaintiff presented some objective evidence, much of her claim hinges on the credibility of her subjective complaints of pain and its intensity, persistence, and limiting effects. Ordinarily, once a Law Judge has found that there is objective evidence of medical conditions which reasonably could produce the alleged symptoms, disability can be premised on credible

---

[8] In his November 2009 opinion, Dr. Widra noted that plaintiff's Global Assessment of Functioning score over the prior year was 60, indicating a moderate degree of impairment. (R. 1179.) However, a neuropsychological evaluation performed by the Woodrow Wilson Rehabilitation Center in November 2010 revealed a range of moderate to severe impairments and mildly impaired to below average intellectual functioning. (R. 1377-1380.) Plaintiff was diagnosed with "rule out organic brain syndrome," major depressive disorder, and a dependent personality disorder. (R. 1380.) She was also found to be anxious, distractible, tended to suffer problems with comprehension, motor speed, dexterity, and memory. (R. 1378-1380.) The report also encouraged plaintiff to follow up with a neurologist for underlying neurological issues. *Id.* While this report does indicate that plaintiff suffered significant limitations, it runs in counter to the physical examination findings of other physicians as well as Dr. Widra's opinion. Dr. Widra specifically noted that plaintiff did not have a low IQ or diminished functioning. (R. 1182.)

8

testimony relating to the intensity, persistence, and limiting effects of those symptoms. *See Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006). In this case, there is substantial evidence supporting the Law Judge's finding that plaintiff's allegations are not entirely credible.

Plaintiff has asserted that she is very limited in her daily activities, in that she "didn't do things around the house;" she engaged in no regular activities outside of going to work and various doctor's appointments, had no hobbies or activities, and that she needed to bring in someone to help with household chores. (R. 100, 413-420.) However, there is a great deal of evidence in the record contradicting plaintiff's testimony. Anne See, plaintiff's friend, testified that plaintiff did laundry and light housework and had a regular social life. (R. 396-402.) Several of plaintiff's treatment providers mention her doing household chores, and her physical therapist indicated that she performed "heavy housework." (R. 1248, 1709, 1714, 1717, 1723.) Plaintiff testified that she needed to use an electric scooter while shopping, as she could only stand for about ten minutes and walk about a block. (R. 101-102, 413-420.) However, she told her physical therapist that she had walked for two hours while shopping, though she claimed to have suffered pain as a result. (R. 1702.)

As mentioned, plaintiff has claimed to suffer extreme pain, reporting on several occasions that her pain reached a 9-10 level out of 10 on the pain scale. (R. 1171, 1464-1467, 1512-1514, 1539-1540, 1615-1617, 1815-1816.) However, her treatment providers generally reported that she was not in distress, presented with normal mood and affect, was not anxious; but was pleasant, alert and oriented, and ambulating without difficulty or complaint.[9] *Id.* Notably, in October 2011, plaintiff reported to be suffering from a migraine which caused 10/10 pain. (R.

---

[9] Plaintiff once told her therapist that her impression of the severity of her condition was closely related to how depressed she was at the time. (R. 1245.) An example of such could be shown in the April 15, 2011 treatment note where plaintiff presented with stable hypertension and depression while complaining of 10/10 pain. (R. 1615-1617.) Plaintiff may also have a history of narcotic seeking behavior. (R. 1414.)

9

1815-1816.) However, the emergency room doctor reported, "the patient appears to be in absolutely no distress whatsoever. She is lying comfortably on a stretcher and has been walking around the emergency department without any difficult or assistance." (R. 1815.) He followed up by noting that plaintiff was comfortable, well appearing, not affected by light, and "does not appear to be having 10/10 pain like she reports." (R. 1816.) While plaintiff likely suffered pain as a result of her impairments, especially her migraines, the evidence of its degree and effects is contradicted. In the end, the undersigned finds that there is substantial evidence supporting a determination that plaintiff was not always accurate in describing the intensity of her symptoms.

All this aside, the Law Judge found that plaintiff has worked since her disability onset date. Plaintiff testified that she worked part time as a telephone surveyor three days a week for five hours per day. (R. 88.) The regulations permit a Law Judge to consider all work-related activity performed by the claimant during the relevant period as a factor in determining whether the claimant is not as limited as claimed or is capable of working more hours than presently worked. *See* 20 C.F.R. § 404.1571; *See* 20 C.F.R. § 404.1573; SSR 96-7p (July 2, 1996). Here, the Law Judge found that plaintiff's work activities were inconsistent with her alleged limitations, and this finding is supported by substantial evidence.[10]

The Law Judge also found that the opinions of plaintiff's treatment providers, specifically those of Vivian Brobby, M.D., Ken Widra, M.D., and Don Martin, M.D., were not entitled to significant weight. (R. 30-32.) While normally entitled to greater weight than those of non-treating or non-examining physicians, treating source evidence need not be controlling where it is inconsistent with the treatment record or not supported by valid clinical and diagnostic

---

[10] Additional evidence filed before the Appeals Council was offered to show that plaintiff's maladies caused greater work-related limitations than found by the Law Judge. (R. 1911.) The undersigned will address this evidence in dealing with plaintiff's challenge to the Appeals Council's determination that there was no basis to review the Law Judge's decision.

techniques. *See* 20 C.F.R. § 416.927; *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The Law Judge is tasked with resolving conflicts in the record and balancing the weight to assign evidence, and his findings will be affirmed if they are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A Law Judge may assign little or no weight to a medical opinion, even from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d) if he sufficiently explains his rationale and if the record supports his findings. *See Thompson v. Astrue*, 2008 WL 4273840, *11 (W.D.Va. Sept. 17, 2008).

Here, the Law Judge found that the three purported treating source opinions were not entitled to significant weight. *Id.* Dr. Brobby opined, among other things, that plaintiff would be unable to sit or stand for even two hours of an eight hour workday, would need six unscheduled breaks during a shift, and could rarely stoop. (R. 1187-1188.) The Law Judge found this opinion lacking support by the record, and actually inconsistent with parts of it, thus assigning it no weight. (R. 61.)

As the Law Judge noted, plaintiff actually performed sedentary work three days a week for five hours a day with one scheduled break, and plaintiff, herself, admitted that she sat for at least 4 hours a day at work. (R. 61, 389.) These activities are inconsistent with the limitations Dr. Brobby expressed. While Dr. Brobby examined plaintiff on October 15, 2009 and October 29, 2009, it is a stretch to conclude that she gained much of a longitudinal view of plaintiff's maladies and their vocational effects. (R. 1185.) Moreover, no treatment notes relating to those visits were produced, except imaging reports showing plaintiff's knee to be normal. (R. 1186, 1190-1191.) Dr. Brobby did sign a "Patient Plan" effective March 3, 2011, but that plan was developed more than a year after she rendered her opinion, and offers no view of plaintiff's

11

functional limitations. (R. 1641.) There is substantial evidence supporting the conclusion that neither the medical record nor plaintiff's testimony supports Dr. Brobby's opinion. Accordingly, the Law Judge's decision not credit Dr. Brobby is supported by substantial evidence.

The Law Judge also found that Dr. Martin's opinion was not consistent with plaintiff's work activities. As with Dr. Brobby, Dr. Martin opined that plaintiff would be unable to sit or stand for even two hours of an eight hour workday, could only rarely stoop, and would need unscheduled breaks ever fifteen minutes, lasting ten minutes each. (R. 1554-1555.) Furthermore, he found that plaintiff would only be able to use her hands, fingers, and arms for 1% of an eight hour workday.[11] (R. 1555.) These limitations were found inconsistent with plaintiff's work-related and other daily activities, which, interestingly, would have been ruled out entirely according to Dr. Martin. The opinion also conflicts with other record evidence showing either the absence of any limitations or only moderate deficits in plaintiff's abilities. Accordingly, the Law Judge's findings are supported by substantial evidence.

Finally, the Law Judge found that Dr. Widra's opinion relating to plaintiff mental status was only entitled to weight to the degree it was consistent with his RFC determination. The Law Judge found that plaintiff's mental health treatment record was "hardly reflective of a disabling mental condition," for it did not reveal significant ongoing psychological signs on examination. (R. 62.) Furthermore, he found that Dr. Widra's opinion was internally inconsistent, pointing in particular to plaintiff's Global Assessment of Functioning Score of 60, which reveals a moderate to mild degree of impairment.[12] (R. 62.) The Law Judge also noted the inconsistency between

---

[11] In contrast, Dr. Brobby found that plaintiff could use her hands and fingers for 100% of an eight hour workday and her arms for 25%. (R. 1188.)

[12] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM–IV). A GAF score of 51-60 indicates moderate symptoms or

Dr. Widra's finding that plaintiff would need an unreasonable number of breaks and rest periods and plaintiff's part time work activities. (R. 62-63.) Moreover, plaintiff received minimal treatment on what reasonably could be found to be minimal findings by Dr. Widra, and she generally did not present with serious mental or psychological deficits when being physically examined on numerous occasions by other physicians.

In summary, the Law Judge's decision to assign little to no weight to the opinions of plaintiff's treatment providers is supported by substantial evidence. While the undersigned may have given these opinions and plaintiff's allegations of disabling limitations greater weight, the Law Judge is tasked by the regulations with determining the credibility of testimony, resolving inconsistencies in the record, and assigning weight to evidence. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). His decision in these respects is supported by substantial evidence.

Plaintiff also takes issue with the Law Judge's examination of the VE, on the basis that he repeatedly led the VE. This argument has no merit on two grounds. First, there is no rule that prohibits the Law Judge from leading in the presentation of hypothetical facts to a VE. The only limitation is that, for a VE's testimony to be relevant, it must account for the substantial evidence in the record. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 767-769 (W.D.Va. 2002). Second, though perceived as heavy handed by plaintiff's counsel, the Law Judge actually presented hypothetical facts relating to plaintiff's ability to stoop to a conclusion that, if accepted as facts, would foreclose any gainful activity. (R. 131-132.) However, as discussed above, the Law Judge did not find that plaintiff was as limited as she and some of her doctors claimed.

---

moderate difficulties in social, occupational, or school functioning. *Id.* A GAF score of 61-70 indicates mild symptoms or some difficulty in social, occupational, or school functioning. *Id.*

Therefore, he found that jobs would be available, rendering the VE's answers to the leading hypothetical questions moot. Those decisions are supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

April 5, 2013
Date